# EXHIBIT 1

1 **GEORGE BEAN LAW**
2 George H. Bean (SBN 306016)
340 E. 1st Street, #1127
3 Tustin, CA 92781
Telephone: (714) 904-9338
4 *george@georgebeanlaw.com*

Electronically FILED by
Superior Court of California,
County of Los Angeles
11/26/2025 11:33 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Jo-Fung, Deputy Clerk

5
6 Attorney for Plaintiff, Alyssa Monarrez
7
8                    SUPERIOR COURT OF CALIFORNIA
9                        COUNTY OF LOS ANGELES
10

| | |
|---|---|
| 11 ALYSSA MONARREZ, an individual, | CASE NO.   **25NNCV08520** |
| 12 | **COMPLAINT FOR:** |
| 13 | |
| 14            Plaintiff, | 1. **SEXUAL HARASSMENT** |
| 15 | 2. **FAILURE TO PREVENT SEXUAL HARASSMENT** |
| 16 v. | 3. **HARASSMENT BASED ON RACE** |
| 17 | 4. **RETALIATION UNDER FEHA** |
| 18 | 5. **RETALIATION UNDER THE CALIFORNIA LABOR CODE** |
| 19 JPMORGAN CHASE BANK, NATIONAL | 6. **WRONGFUL TERMINATION** |
| 20 ASSOCIATION, a national banking association organized under the laws of the | 7. **FALSE IMPRISONMENT** |
| 21 United States, and DOES 1 through 50, inclusive | |
| 22 | **DEMAND FOR JURY TRIAL** |
| 23 | |
| 24 | |
| 25            Defendants. | |

26 ///
27 ///
28 ///

COMPLAINT FOR DAMAGES

Comes now Plaintiff Alyssa Monarrez, who states, alleges, and prays as follows:

**I.    PARTIES**

1.    PLAINTIFF ALYSSA MONARREZ ("Plaintiff" or "Monarrez") is, and at all times relevant hereto, was an individual residing in the State of California, and worked for Defendant in the County of Los Angeles.

2.    DEFENDANT JPMORGAN CHASE BANK, NATIONAL ASSOCIATION ("Defendant" or "Chase") is, and at all relevant times was, a national banking association organized under the laws of the United States, doing business throughout the State of California. Chase is authorized to conduct business in California and maintains a registered agent for service of process in California, C T Corporation System.

3.    Plaintiff does not presently know the true names and capacities of defendants named as DOES 1 THROUGH 50, INCLUSIVE. Plaintiff will amend this Complaint setting forth the true names and capacities of these fictitious defendants when they are ascertained. Plaintiff is informed and believes and, on that basis alleges, that each of the fictitious defendants has participated in the acts alleged in this Complaint to have been done by the named defendants.

4.    Unless otherwise indicated, each defendant herein sued is the agent, co-conspirator, joint-venturer, partner, and/or employee of every other defendant and, as alleged, has been acting within the course and scope of said agency, conspiracy, joint venture, partnership, employment, and/or joint-employment, with the knowledge and/or consent of their co-defendants, and each of them. Plaintiff is informed and believes that each defendant has authorized and/or ratified the wrongful activities of each of the remaining co-defendants.

**II.    JURISDICTION AND VENUE**

5.    The Court has general jurisdiction over this action pursuant to California *Code of Civil Procedure* § 410.10. Defendant is a national banking association organized under the laws of the United States, is authorized to conduct business in the State of California, and does conduct substantial, systematic, and continuous business within California, including in the County of Los Angeles.

6.    Venue is proper in this Court, pursuant to California *Code of Civil*

COMPLAINT FOR DAMAGES

1    *Procedure* §§ 395 and 395.5 because the wrongful acts and omissions alleged herein occurred in

2    the County of Los Angeles, and Plaintiff worked for Chase at branch locations within Los Angeles

3    County. Venue is further proper pursuant to California *Government Code* § 12965(c)(3).

4         7.    Plaintiff has exhausted her administrative remedies by filing a complaint with the

5    California Civil Rights Department ("CRD"). The CRD issued Ms. Monarrez a right-to-sue letter

6    on November 26, 2025, case number 202511-32390426.

7    **III.   BACKGROUND**

8         8.    Plaintiff Alyssa Monarrez began working for JPMorgan Chase Bank, N.A.

9    ("Chase") in March 2018. She progressed quickly, earning promotions to Operations Manager in

10   2019 and Assistant Branch Manager of the Arcadia Mega Branch in May 2023.

11        9.    Plaintiff consistently received positive feedback and had no disciplinary history in

12   her management roles.

13        10.   In January 2025, Plaintiff was assigned a new Branch Manager, Kacey Vien. From

14   the beginning of their working relationship, Vien made racially charged remarks about Plaintiff's

15   Mexican heritage, including comments that Plaintiff must come from a "loud Mexican family,"

16   that "Mexicans are naturally loud," and similar stereotypes. Vien also made other racially

17   insensitive remarks about Hispanic employees and normalized inappropriate ethnic jokes in the

18   workplace.

19        11.   Vien also engaged in and encouraged inappropriate sexual conduct in the

20   workplace, including sharing sexualized images and jokes with subordinate employees and

21   warning Plaintiff not to "report [her] to HR."

22        12.   Beginning shortly after he joined the branch in September of 2023, a subordinate

23   banker, Armando Lopez, repeatedly subjected Plaintiff to unwanted sexual comments, discussions

24   of sexual topics, intrusive behavior, inappropriate touching, or physical closeness, and persistent

25   boundary violations.

26        13.   He also texted Plaintiff outside of work hours and behaved unprofessionally toward

27   her. Plaintiff reported Lopez's conduct to Vien on multiple occasions, but Vien dismissed or

28   minimized the complaints and took no corrective action.

COMPLAINT FOR DAMAGES

1    14.    Vien's repeated dismissal of Plaintiff's complaints and Chase's failure to take any

2    corrective action emboldened Lopez and contributed to the escalation of his conduct. After

3    Plaintiff's reports were ignored, Lopez became increasingly intrusive, culminating in the July 5,

4    2025 vault confinement and the July 9, 2025 vault incident that caused Plaintiff to fear being

5    locked in again.

6    15.    Plaintiff reported to Vien that Lopez's sexualized comments, late-night messages,

7    physical closeness, and inappropriate touching, were escalating in frequency and severity, and that

8    she feared the conduct would continue without intervention. Vien had full knowledge of the

9    specific conduct described by Plaintiff, including the dates, circumstances, and witnesses to the

10    harassment, yet chose to take no action. Vien's actual knowledge and failure to act placed Chase

11    on notice of ongoing unlawful harassment but Chase failed to take any steps to investigate,

12    discipline, or restrict Lopez's access to Plaintiff.

13    16.    On July 5, 2025, while Plaintiff and another employee were inside the walk-in

14    vault, which also served as Plaintiff's workspace, Lopez intentionally locked the vault door,

15    trapping them inside. The incident was captured on video. Plaintiff immediately reported the event

16    to Vien, who again brushed it off and failed to open any investigation or take any safety measures.

17    17.    The vault confinement incident constituted a serious safety violation and a potential

18    criminal act. Plaintiff reasonably believed Lopez's conduct was unlawful when she reported it.

19    18.    Four days later, on July 9, 2025, Lopez again directed Plaintiff into the vault. Once

20    inside, he positioned himself in a manner that obstructed the exit and caused Plaintiff to fear being

21    locked in a second time. Plaintiff quickly exited the vault to avoid another entrapment. Chase later

22    characterized this exit as "pushing" Lopez.

23    19.    On July 17, 2025, Vien informed Plaintiff that an internal case had been opened

24    against her. On July 24, 2025, Chase terminated Plaintiff's employment, asserting that she "put

25    [her] hands on another employee."

26    20.    Plaintiff reported Vien's ongoing racial and sexual misconduct and Chase's failure

27    to address Lopez's prior lock-in incident. Chase refused to investigate those issues, stating the

28    investigation was focused solely on Plaintiff.

COMPLAINT FOR DAMAGES

1      21.     Following her termination, Plaintiff experienced significant emotional distress,

2  including panic attacks, anxiety, sleep disruption, and depression, and began attending therapy.

3      22.     Plaintiff's reports of sexual harassment and workplace safety violations qualify as

4  protected disclosures under state and federal law, and Chase's refusal to act after receiving those

5  reports constitutes independent ratification of the unlawful conduct and demonstrates its failure to

6  maintain a workplace free of harassment as required by law.

### FIRST CAUSE OF ACTION

**Sexual Harassment in Violation of FEHA**

**(California Government Code § 12940(j))**

      23.     Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

      24.     California *Government Code* § 12900, *et seq.*, known and referred to as the California Fair Employment and Housing Act ("FEHA"), contains important public policies of the State of California which protect and safeguard the right and opportunity of all persons to hold employment without being harassed.

      25.     Plaintiff is informed and believes, and thereon alleges, that at all relevant times, Defendant was an employer as that term is defined by California *Government Code* § 12926(d), regularly employing more than five persons, including Plaintiff.

      26.     California *Government Code* § 12940(j) provides in pertinent part that it is an unlawful employment practice for an employer to harass an employee, including coworkers when an employer's agents or supervisors knew or should have known of the conduct and fail to take immediate and appropriate corrective action. When an employer knows of a coworker's harassment and fails to take appropriate corrective action, that employer is liable for the harassment. See <u>Rehmani v. Superior Court</u> (2012) 204 Cal.App.4th 945, 952.

      27.     Ms. Monarrez was severely and pervasively sexually harassed by her coworker, Armando Lopez ("Lopez"). Chase was aware of this conduct and failed to address it. This harassment started in 2023 and continued until July of 2025.

COMPLAINT FOR DAMAGES

28.    Lopez repeatedly engaged Plaintiff in explicit discussions about women he found sexually attractive, including celebrities, coworkers, and bank customers. He frequently described women's bodies in graphic sexual terms, including breasts, buttocks, and other physical features.

29.    Lopez made ongoing sexual comments about the women on the TV show "Love Island," describing their bodies in detail. Love Island is a reality show that has a significant focus on women's bodies with a specific focus on the "perfect" body. He told Plaintiff that she was a "Huda type," implying sexualized comparisons to one of the Love Island contestants which made Plaintiff uncomfortable. He made inappropriate comments referencing Plaintiff and her husband in personal and intimate ways.

30.    Lopez repeatedly pulled up photos of actress Sydney Sweeney, an actress and model considered to have a "stunning" body, and told Plaintiff he wanted to "eat her soap products" and "rub them all over his body."

31.    He pressured Plaintiff to agree with him, telling her, "Come on, there's no way you don't want it, she's so hot," despite Plaintiff telling him to stop.

32.    Lopez showed Plaintiff photos and videos of a woman he had sexual encounters with during a bachelor weekend, including images of the woman scantily dressed and suggestive.

33.    Lopez openly commented on the bodies of female customers, including describing a blonde business client's butt and other body parts. He made these comments publicly in the bank branch, in the presence of Plaintiff and other employees.

34.    Lopez repeatedly got too close to Plaintiff, hovered around her office, and stood within her personal space without justification. He sometimes touched Plaintiff, including massaging her shoulders. Plaintiff sensed his attraction to her and was uncomfortable around him.

35.    Lopez also texted Plaintiff late at night, including a message at 11 p.m. asking, "Hey, what are you up to?" When Plaintiff tried to deflect by saying it was a wrong number, he continued texting: "That's okay, what are you up to?"

36.    He also texted Plaintiff on days off and during vacation about non-work matters.

37.    Between September of 2023 and July 2025, Plaintiff had already made multiple complaints to management, including Vien regarding Lopez's escalating sexual comments,

COMPLAINT FOR DAMAGES

1  inappropriate touching, late-night messages, and intrusion into her personal space. Plaintiff
2  reported that the conduct was unwelcome and was interfering with her ability to supervise Lopez.
3  Vien dismissed these concerns, took no corrective action, and did not elevate the complaints to
4  Human Resources or Employee Relations.

5      38.    Plaintiff repeatedly told Lopez to stop discussing sexual topics and making sexual
6  comments. She told him his conduct was inappropriate and unprofessional. She attempted to
7  establish boundaries and redirect conversations, but he ignored her objections.

8      39.    Plaintiff reported Lopez's sexual comments, inappropriate touching, inappropriate
9  late-night texts, and invasive behavior multiple times to Branch Manager Kacey Vien.

10     40.    Plaintiff specifically told Vien that Lopez's behavior made her uncomfortable and
11 was interfering with her ability to supervise him.

12     41.    Vien dismissed Plaintiff's complaints, laughed off the behavior, and normalized the
13 inappropriate environment. Chase failed to investigate Lopez's sexual harassment even after
14 multiple reports. Vien frequently joked with employees about sexual content and shared
15 inappropriate memes, creating a permissive culture. Vien laughed at Lopez's inappropriate
16 behavior in front of staff, reinforcing that his conduct was acceptable.

17     42.    By failing to investigate Plaintiff's repeated complaints, dismissing the concerns,
18 normalizing Lopez's conduct, and allowing Lopez to remain in his position without any corrective
19 action, Chase ratified and approved Lopez's conduct. Vien's responses communicated to Lopez
20 that his behavior was permissible, encouraged him to continue, and caused the harassment to
21 escalate. Such conduct by a managing agent constitutes ratification by Chase of Lopez's ongoing
22 harassment.

23     43.    Lopez remained in his position without coaching, discipline, or monitoring despite
24 ongoing harassment. This continued failure to act allowed his behavior to escalate.

25     44.    Lopez's harassment of Ms. Monarrez was severe and pervasive and caused a
26 hostile, intimidating, offensive, oppressive, and abusive work environment. Defendant's
27 ratification of his conduct renders them a joint participant in the offense. An employer may be
28 liable for an employee's conduct where the employer failed to respond to charges against the

1    employee, or failed to discharge an employee who has committed the misconduct. <u>Ventura v. ABM</u>

2    <u>Industries, Inc.</u> (2012) 212 Cal.App.4th 258, 271-272.

3        45.    As a proximate result of the acts and omissions of Defendant, Ms. Monarrez has

4    suffered, and continues to suffer severe emotional distress, anguish, pain, discomfort, and anxiety.

5    Ms. Monarrez does not know at this time the exact duration and permanence of said injuries, but

6    is informed and believes, and alleges thereon, that some if not all of the injuries are reasonably

7    certain to be permanent in character.

8        46.    Ms. Monarrez will seek attorney's fees and costs pursuant to California

9    *Government Code* § 12965(c)(6) made applicable to this action under California *Government*

10    *Code* § 12965(a), and any other applicable provision of law.

11        47.    Ms. Monarrez will be further seeking exemplary damages, pursuant to California

12    Civil Code § 3294, because Defendant engaged in said conduct with malice and oppression.

13    <b><u>SECOND CAUSE OF ACTION</u></b>

14    <b>Failure to Prevent Sexual Harassment</b>

15    <b>(Government Code § 12940(j))</b>

16        48.    Plaintiff incorporates in this cause of action each and every allegation of the

17    preceding paragraphs, with the same force and effect as though fully set forth herein.

18        49.    FEHA imposes an affirmative duty on employers to take all reasonable steps

19    necessary to prevent discrimination and harassment from occurring. (Gov. Code § 12940(k).)

20        50.    Harassment of an employee is unlawful, and an employer is liable if the employer

21    "knows or should have known of this conduct and fails to take immediate and appropriate

22    corrective action." See California *Government Code* § 12940(j).

23        51.    As alleged in the First Cause of Action, Plaintiff was subjected to severe and

24    pervasive sexual harassment by subordinate banker Armando Lopez, including persistent sexual

25    comments, discussions of sexual topics, inappropriate touching, and proximity, late-night personal

26    messages, sexualized images, and intrusive conduct.

27        52.    Plaintiff made multiple reports to her supervisors, including Branch Manager

28    Kacey Vien, regarding Lopez's sexually inappropriate conduct, unprofessional behavior, invasion

of personal space, and boundary violations.

53.    Despite Plaintiff's repeated complaints, Chase failed to conduct a prompt, thorough, or impartial investigation, failed to discipline Lopez, and failed to take corrective or preventive action reasonably calculated to stop the harassment.

54.    Instead of addressing Plaintiff's complaints, Plaintiff's supervisor dismissed, minimized, or laughed off the conduct, signaling that the behavior was permissible and normal in the workplace.

55.    Chase's failure to take reasonable steps to prevent harassment allowed Lopez's conduct to continue and escalate, causing Plaintiff to experience increased distress, fear, and disruption of her ability to perform her job duties.

56.    Chase further failed to provide Plaintiff with a safe working environment, adequate supervision, effective reporting channels, or appropriate responses to reports of misconduct.

57.    Chase's failure to take reasonable steps to prevent sexual harassment was a substantial factor in causing Plaintiff harm, including emotional distress, anxiety, humiliation, and financial losses.

58.    Chase's failure to respond to Plaintiff's complaints, combined with Vien's dismissive and joking reactions to Lopez's misconduct, directly contributed to Lopez's belief that his conduct was tolerated and would not result in disciplinary action. By choosing not to remove, retrain, or discipline Lopez after receiving multiple reports, Chase effectively permitted the harassment to continue and escalate, and thereby failed to take reasonable steps that would have prevented further harassment.

59.    Here, Ms. Monarrez reported to Defendant that she was suffering sexual harassment from Lopez, but Defendant did nothing to prevent it, and in fact endorsed it to continue.

60.    Defendant's actions and omissions were a direct and proximate cause of Ms. Monarrez's damages, including but not limited to mental suffering. Ms. Monarrez further seeks attorney's fees and costs pursuant to California *Government Code* § 12965(c)(6), and any other applicable provision of law, as well as interest and costs of suit.

COMPLAINT FOR DAMAGES

61.    Ms. Monarrez will be further seeking exemplary damages, pursuant to California *Civil Code* § 3294, because employees of Defendant engaged in conduct with malice, oppression, or fraud.

### THIRD CAUSE OF ACTION

### Harassment Based on Race in Violation of FEHA

### (California Government Code § 12940(j))

62.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

63.    FEHA prohibits harassment on the basis of race, color, and national origin. (Gov. Code § 12940(a).)

64.    Plaintiff is Mexican-American, and thus belongs to protected racial and national origin classes under FEHA.

65.    Throughout Plaintiff's employment under Branch Manager Kacey Vien, Plaintiff was subjected to repeated, unwelcome racial and national origin based remarks, stereotypes, and derogatory comments.

66.    Vien told Plaintiff that she must come from a "loud Mexican family," stated that "Mexicans are naturally loud," and directed Plaintiff to "shut the f--- up" while associating her volume with her heritage.

67.    Vien made other generalized derogatory comments about Hispanic individuals, including statements that "Hispanics blow up easily" and comments suggesting that Hispanic employees shared certain stereotypical body types.

68.    Vien further made racially insensitive comments about other Hispanic staff and normalized racial jokes in the workplace, including permitting comments such as referring to a Hispanic coworker as "bean" and laughing at or encouraging ethnically charged remarks made in Plaintiff's presence.

69.    Vien also made racially tinged remarks when Plaintiff referenced working with a cleaning contractor named Maria, responding sarcastically, "Of course her name is Maria. I should have guessed."

COMPLAINT FOR DAMAGES

1     70.     These comments and behaviors were pervasive and occurred in front of other

2  employees, creating a racially hostile and humiliating work environment.

3     71.     Plaintiff subjectively found this conduct offensive, and a reasonable person in

4  Plaintiff's circumstances would likewise find the conduct abusive, hostile, and racially degrading.

5     72.     As a supervisor and managing agent of Chase, Vien's conduct is imputed directly

6  to Chase under FEHA. Additionally, Chase is independently liable because it knew or should have

7  known of the harassment and failed to take corrective action.

8     73.     Defendant's conduct, and the conduct of its agents, was a substantial factor in

9  causing Plaintiff harm, including emotional distress, humiliation, and the deterioration of her

10  working conditions.

11     74.     Defendant's actions and omissions were a direct and proximate cause of Ms.

12  Monarrez's damages, including but not limited to mental suffering. Ms. Monarrez further seeks

13  attorney's fees and costs pursuant to California *Government Code* § 12965(c)(6), and any other

14  applicable provision of law, as well as interest and costs of suit.

15     75.     Ms. Monarrez will be further seeking exemplary damages, pursuant to California

16  *Civil Code* § 3294, because employees of Defendant engaged in conduct with malice, oppression,

17  or fraud.

18
### FOURTH CAUSE OF ACTION

19
#### Retaliation in Violation of FEHA

20
#### (California Government Code § 12940(h))

21     76.     Plaintiff incorporates in this cause of action each and every allegation of the

22  preceding paragraphs, with the same force and effect as though fully set forth herein.

23     77.     FEHA prohibits employers from retaliating against employees who oppose,

24  complain about, or report discrimination or harassment based on protected characteristics,

25  including race, national origin, and sex. (Gov. Code § 12940(h).)

26     78.     Plaintiff engaged in multiple protected activities under FEHA by reporting and

27  opposing the racial harassment and sexual harassment described above, including the conduct of

28  Armando Lopez and the racially derogatory and inappropriate conduct of Kacey Vien.

COMPLAINT FOR DAMAGES

79.   Plaintiff made these reports directly to her supervisors, including Vien and other management personnel, and expressed that the conduct was unwelcome, inappropriate, and interfering with her ability to perform her job duties.

80.   Defendant's supervisors did not merely fail to act on Plaintiff's complaints; their conduct affirmatively conveyed that Plaintiff's reports were unwelcome. Vien's repeated dismissal of Plaintiff's concerns and her refusal to initiate any corrective action demonstrated hostility toward the protected activity itself and further contributed to the retaliatory motive behind the subsequent adverse actions.

81.   Defendant had knowledge of Plaintiff's protected activity through these direct complaints and disclosures to supervisors and managers.

82.   After Plaintiff engaged in protected activity, Defendant took adverse employment actions against her, including opening an internal case against her, treating her complaints dismissively, and ultimately terminating her employment on July 24, 2025.

83.   The adverse actions taken against Plaintiff occurred in close temporal proximity to Plaintiff's protected activity and were motivated, at least in substantial part, by her reports of unlawful harassment.

84.   Defendant further retaliated against Plaintiff by treating her protected report of being confined in the vault as misconduct and using her reasonable efforts to avoid a second confinement as a pretext to discipline and terminate her. By characterizing Plaintiff's attempt to escape a repeated false imprisonment as wrongdoing, Defendant re-ratified Lopez's conduct and punished Plaintiff for reporting and reacting to unlawful behavior, further demonstrating retaliatory intent.

85.   Plaintiff's complaints regarding harassment were a substantial motivating reason for Defendant's decision to terminate her employment.

86.   As a result of Defendant's retaliation, Plaintiff suffered and continues to suffer emotional distress, humiliation, anxiety, lost earnings, lost employment benefits, and other compensable damages in an amount to be proven at trial.

COMPLAINT FOR DAMAGES

87.    Defendant's conduct was conducted by supervisors and managing agents of Chase acting within the scope of their authority, subjecting Defendant to liability under FEHA.

88.    Defendant's actions were a direct and proximate cause of Ms. Monarrez's damages, including but not limited to mental suffering. Ms. Monarrez further seeks attorney's fees and costs pursuant to California *Government Code* § 12965(c)(6), and any other applicable provision of law, as well as interest and costs of suit.

89.    Ms. Monarrez will be further seeking exemplary damages, pursuant to California *Civil Code* § 3294, because employees of Defendant engaged in conduct with malice, oppression, or fraud.

## FIFTH CAUSE OF ACTION

### Retaliation in Violation of the California Labor Code

### (California Labor Code § 1102.5)

90.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

91.    At all relevant times, Plaintiff was an employee, and Defendant was an employer within the meaning of Labor Code sections 1102.5 and 1106.

92.    Labor Code section 1102.5 prohibits an employer from retaliating against an employee for disclosing information that the employee reasonably believes reveals a violation of state or federal statutes, rules, or regulations, including workplace safety laws, criminal laws, banking regulations, and laws prohibiting discrimination and harassment.

93.    Plaintiff engaged in protected activity under Labor Code section 1102.5 by making good-faith disclosures to her supervisors, management, and human resources about conduct she reasonably believed to be unlawful, including but not limited to: (a) Armando Lopez's physical confinement of Plaintiff and another employee inside the vault; (b) workplace safety violations; (c) violations of banking security policies, including discovery of an unsecured cash box; and (d) violations of state and federal anti-discrimination and anti-harassment laws, including sexual harassment and race-based harassment.

COMPLAINT FOR DAMAGES

94. Plaintiff made these disclosures directly to her supervisors, including Branch Manager Kacey Vien, and later to Human Resources and Employee Relations personnel responsible for receiving and investigating such reports.

95. Defendant knew of Plaintiff's protected activity because the disclosures were made directly to supervisory and managerial employees and through Defendant's internal reporting channels.

96. Defendant's prior ratification of Lopez's misconduct and its refusal to protect Plaintiff after her initial report of the vault confinement contributed to an environment where Plaintiff's continued reporting of unlawful behavior was viewed unfavorably. This hostility toward Plaintiff's protected disclosures further demonstrates that her engagement in protected activity under FEHA and Labor Code section 1102.5 was a substantial motivating factor in her termination.

97. After Plaintiff engaged in protected activity, Defendant retaliated against her by subjecting her to adverse employment actions, including opening an internal case against her, treating her reports dismissively, threatening disciplinary action, and ultimately terminating her employment on July 24, 2025.

98. Defendant terminated Plaintiff's employment within days or weeks of Plaintiff's protected disclosures. Under Labor Code section 1102.6(b), an adverse action taken within 90 days of protected activity gives rise to a rebuttable presumption that the action was retaliatory.

99. Defendant further retaliated against Plaintiff by treating her protected report of being confined in the vault as misconduct and using her reasonable efforts to avoid a second confinement as a pretext to discipline and terminate her. By characterizing Plaintiff's attempt to escape a repeated false imprisonment as wrongdoing, Defendant re-ratified Lopez's conduct and punished Plaintiff for reporting and reacting to unlawful behavior, further demonstrating retaliatory intent.

100. Plaintiff's protected disclosures were a contributing factor in Defendant's decision to terminate her employment.

101. Because Plaintiff has shown that retaliation was a contributing factor in the adverse actions taken against her, Defendant bears the burden, under Labor Code section 1102.6, of

COMPLAINT FOR DAMAGES

1    proving by clear and convincing evidence that it would have taken the same action for legitimate,

2    independent reasons. Defendant cannot meet that burden.

3        102.    As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff

4    suffered and continues to suffer damages, including emotional distress, anxiety, humiliation, lost

5    earnings, lost employment benefits, and other compensable harm in an amount according to proof

6    at trial.

7        103.    Pursuant to Labor Code section 1102.5 and Code of Civil Procedure section 1021.5,

8    Plaintiff is entitled to recover her reasonable attorneys' fees and costs incurred in this action.

9    **SIXTH CAUSE OF ACTION**

10    **Wrongful Termination in Violation of Public Policy**

11        104.    Plaintiff incorporates in this cause of action each and every allegation of the

12    preceding paragraphs, with the same force and effect as though fully set forth herein.

13        105.    Under California law, it is a fundamental public policy that employers must

14    maintain a workplace free from sexual harassment, racial harassment, and discrimination, as

15    embodied in the Fair Employment and Housing Act (Government Code section 12940 et seq.). It

16    is also the public policy of the State of California to protect employees from retaliation for

17    reporting or opposing such unlawful conduct. (Government Code section 12940(h).)

18        106.    It is additionally a fundamental public policy of the State of California that

19    employers may not retaliate against employees for disclosing or refusing to participate in violations

20    of state or federal statutes, regulations, or public safety rules, as reflected in Labor Code section

21    1102.5 and related whistleblower protections.

22        107.    Plaintiff engaged in protected activities under these public policies by reporting and

23    opposing conduct she reasonably believed to be unlawful, including sexual harassment, racial

24    harassment, workplace safety violations, and other violations of state and federal law.

25        108.    Plaintiff made these reports to her supervisors, including Branch Manager Kacey

26    Vien, and subsequently to Human Resources and Employee Relations personnel.

27        109.    Defendant knew of Plaintiff's protected activity because Plaintiff made the

28    complaints directly to supervisors and through Defendant's internal reporting channels. After

COMPLAINT FOR DAMAGES

1  Plaintiff engaged in protected activity, Defendant took adverse employment actions against her,

2  culminating in the termination of her employment on July 24, 2025.

3      110.   Plaintiff's protected activities were a substantial motivating reason for Defendant's

4  decision to terminate her employment.

5      111.   Defendant's decision to terminate Plaintiff was further motivated by its earlier

6  ratification of Lopez's misconduct. By dismissing Plaintiff's report of the July 5, 2025

7  confinement and taking no corrective action, Defendant placed Plaintiff in a position where she

8  reasonably feared a second confinement. When Plaintiff attempted to protect herself from renewed

9  danger, Defendant treated that response as misconduct and used it as the stated basis for her

10  termination. Defendant's reliance on circumstances created by its own ratification of unlawful

11  conduct further evidences that Plaintiff's protected activity was a substantial motivating factor in

12  the termination decision.

13      112.   Plaintiff's termination violated the fundamental public policies of the State of

14  California embodied in the Fair Employment and Housing Act and Labor Code section 1102.5,

15  including the policies prohibiting harassment, discrimination, and retaliation, and protecting

16  employees who report reasonably suspected unlawful conduct or workplace safety violations.

17      113.   As a direct and proximate result of Defendant's wrongful termination, Plaintiff has

18  suffered and continues to suffer damages including loss of earnings, loss of career opportunities,

19  emotional distress, humiliation, anxiety, and other compensable harm in an amount to be proven

20  at trial.

21      114.   Plaintiff is entitled to recover all damages permitted under California law for

22  wrongful termination, including compensatory damages, emotional distress damages, and other

23  economic and non-economic damages according to proof.

24      115.   Plaintiff is also entitled to recover her reasonable attorneys' fees and costs pursuant

25  to the private attorney general doctrine (Code of Civil Procedure section 1021.5), where

26  applicable.

27  ///

28  ///

COMPLAINT FOR DAMAGES

## SEVENTH CAUSE OF ACTION

### False Imprisonment

116.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

117.    On July 5, 2025, while Plaintiff and another employee were inside the walk-in vault performing work duties, Lopez intentionally closed and secured the vault door, confining Plaintiff and the other employee inside through the use of a physical barrier and preventing their exit for an appreciable period of time. Lopez's conduct constituted a nonconsensual, intentional confinement.

118.    Plaintiff did not consent to the confinement, and immediately reported the incident to her supervisor, Vien, who dismissed and minimized the report, failed to initiate any investigation, and took no steps to discipline Lopez, supervise him, or ensure Plaintiff's safety.

119.    Defendant's failure to act after receiving notice of the July 5 confinement constituted approval and ratification of Lopez's conduct, and created a work environment in which Lopez reasonably believed he could continue or repeat similar conduct without consequence.

120.    On July 9, 2025, only four days after the initial confinement, Lopez again directed Plaintiff into the vault. Once inside, Lopez positioned his body in a manner that obstructed or narrowed the exit and caused Plaintiff to reasonably fear that he intended to confine her again, or that he could easily repeat the prior lock-in. Given the prior incident and Defendant's failure to address it, Lopez's conduct on July 9 constituted confinement or attempted confinement by menace and unreasonable duress.

121.    Plaintiff exited the vault quickly to avoid another confinement. Her reaction was directly influenced by her knowledge that Defendant had taken no action after the earlier lock-in and had effectively ratified Lopez's conduct, increasing the immediacy and reasonableness of her fear of a second imprisonment.

122.    Defendant further ratified Lopez's conduct by treating Plaintiff's effort to escape the perceived confinement as misconduct, opening an internal case against her, characterizing her actions as "pushing an employee," and terminating her employment shortly thereafter. This sequence constituted a second ratification of Lopez's conduct and conveyed that Lopez's actions,

COMPLAINT FOR DAMAGES

1  both the initial confinement and the circumstances creating fear of a repeat incident, were

2  acceptable and justified.

3      123.    As a direct and proximate result of the confinement on July 5, Plaintiff experienced

4  harm including fear, anxiety, humiliation, and emotional distress. As a further direct consequence

5  of Defendant's ratification of that conduct, Plaintiff experienced an intensified and reasonable fear

6  of a second confinement on July 9, which contributed to her emotional distress and ultimately to

7  the adverse employment actions taken against her.

8      124.    Under California law, an employer is liable for an employee's intentional tort when

9  the employer ratifies the conduct, fails to take corrective action after notice, or retains the employee

10  under circumstances that allow the misconduct to continue. Defendant's ratification and failure to

11  intervene render it liable for the false imprisonment suffered by Plaintiff and for the harm resulting

12  from the subsequent attempted or threatened confinement.

13      125.    Plaintiff is entitled to recover all damages permitted under California law,

14  including emotional distress, humiliation, fear, inconvenience, and other compensable losses.

15

16                          **PRAYER FOR RELIEF**

17  WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

18      1.    For general damages according to proof, including emotional distress, humiliation,

19          anxiety, and mental suffering;

20      2.    For special damages, including but not limited to lost earnings, lost employment

21          benefits, and loss of future earnings capacity, according to proof;

22      3.    For statutory damages, civil penalties, and remedies available under the Fair

23          Employment and Housing Act, including all damages authorized by Government

24          Code section 12965;

25      4.    For statutory penalties and remedies available under Labor Code section 1102.5,

26          including the civil penalty authorized by subdivision (f) and all damages authorized

27          by Labor Code section 1105;

28      5.    For damages for wrongful termination in violation of public policy, according to

COMPLAINT FOR DAMAGES

proof;

6.   For damages for false imprisonment, including all compensatory damages allowed under California law;

7.   For exemplary and punitive damages, to the extent permitted by law, based on Defendant's ratification of the malicious, oppressive, and retaliatory conduct of its managing agents and supervisors;

8.   For prejudgment interest as permitted by law;

9.   For attorneys' fees and costs pursuant to Government Code section 12965, Labor Code sections 1102.5 and 1105, Code of Civil Procedure section 1021.5, and any other applicable authority;

10.  For costs of suit incurred herein;

11.  For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of her claims by a jury, to the extent authorized by law.

RESPECTFULLY SUBMITTED.

November 26, 2025.                          **GEORGE BEAN LAW**

George H. Bean, Attorney for
Plaintiff, Alyssa Monarrez

COMPLAINT FOR DAMAGES